Good morning, Your Honors. Good morning. I am Doug Denoce in pro se. I would like to take ten minutes and then reserve five for rebuttal, please. I think the starting off point here in my argument is that we have to accept the fact that there was a fraudulent transfer. I don't think there's any question to that. Let me, one thing that's puzzled me and there's probably an easy answer but I haven't found it is that based on your objection, the, I'll just read from the decision. During the second bankruptcy case, the bankruptcy court became aware of the transfer of the Lake Harbor property, the fact the transfer occurred during the first bankruptcy case. Facing result in dismissal, Neff agreed to record a quit claim deed transferring the Lake Harbor property back to himself. He thereafter filed an amended SOFA reporting both the initial and subsequent transfers. So it went back to him at that point. So what's the issue that's left? Well, if I can just go back one step. Okay. He didn't agree he was ordered to. There was a written order for him. Yeah, but it says that it was transferred back to him. Whether he liked it or not, if it was transferred back, I'm not, I don't understand why there's a problem about it being held for some period of time by somebody else. Well, it's a fraudulent transfer. I don't think the code makes a distinction between whether or not he was caught and then voluntarily deeded it back because had he not been caught, well, then he might've gotten away with some bankruptcy fraud. So I think that if the asset's back in the estate, then the creditors can claim against the asset. Are we looking for something beyond that? Well, in a 727 action, I think so. I think he has not played fair with the bankruptcy rules. He's played fast and loose. He's tried to transfer an asset and got caught, but there's more than that. He didn't just transfer the property back to himself. He continued to maintain throughout his bankruptcy that it was still in the retirement trust. And only one day before he filed his motion for summary judgment, did he relent that position. So the entire time that bankruptcy was pending, he was still contending the transfer was effective in essence. But I take it then we're not talking about the availability of that asset for the creditors. We're talking about extracting something else from him because he tried to do something and didn't get away with it. Exactly. He was caught. I mean, unless I misunderstand it, and I very well could, but Section 727... That was three bankruptcies. That was two petitions ago, right? So that was in his first bankruptcy filing. And then there was a second bankruptcy, a second Chapter 13, and then there was the Chapter 7, which is what's now at issue. That's correct. The transfer occurred during the pendency of the first bankruptcy. In fact, it was the day that he was supposed to be at his 341A meeting of creditors. Instead... So you're not alleging anything that he did, anything in the current bankruptcy action. Is that right? I believe that this continued into this action because he did not relent the position that it was in the retirement trust. So did he make a fraudulent transfer during this third bankruptcy proceeding? I would take the position that it was still not unwound, yes. Although title had been transferred. Title had not been transferred. He restricted the deed. It was not a grant deed. It was a quit-claim deed. And on that deed, he wrote in his own handwriting, he wrote, except that debtor contends that this is still part of the retirement trust. So he didn't relent it. But did the bankruptcy court treat that asset as part of the estate available to creditors? Well, that point hasn't been decided yet. There has been no distribution of the bankruptcy assets. It has been sold, and it's in a trust account with the trustee. I don't think any creditor has made a claim or been paid any monies out of this. So does the trustee control that asset? Yes. So presume, I mean, there's no reason to think that that asset won't be available to creditors. It's not like the trustee is going to be handing it back and say, okay, we don't care about this asset anymore, assuming there's value there. No, there's value, and it's been liquidated. I don't know what the status of the claims will be in the future and what the court, the bankruptcy court will decide, but the asset has been liquidated, and it's part of the estate. Oh, it's been liquidated. Yes, it has. So there's cash in the estate for... Yes, it has. Is that something that you have a claim against? I do. I do. In fact, I arrived at a partial settlement of my claim with the trustee, and that matter also went up on appeal with the BAP and has been sent back for some different orders, remanded for some different orders with the bankruptcy court, but that's pending. So what is it you hope to extract from this proceeding? Well, I believe I was prevented from going forward and proving the fraud, and I believe I have a right to do that. I was prevented by... Much more fundamental. All right. What is it that would happen as a result of this which would be beneficial to you and other creditors? All right. Well, for example, with myself, I have a fairly large judgment, over $300,000 for medical malpractice, and that would be paid entirely. There's enough assets in the estate... From what? Well, wait a minute. From what? How does the estate get larger as a result of this proceeding if, in fact, the asset has already been liquidated and that asset's by the trustee? How does it get bigger? If his discharge is denied, I would... My whole judgment would be paid. So it's the denial of discharge we're talking about. So then you could pursue him after the bankruptcy, but the estate, as Judge Clifton was asking, the estate doesn't get any larger. No, that's correct. It's just that you would be able to continue pursuing the claim after the bankruptcy. That's correct, or I don't know how, in this case, because it's been liquidated and it's all in an account with the trustee, what the procedure would be to unwind all that, but my judgment would be deemed non-dischargeable. As a matter of fact, if my 727 action were to be successful, if I were to go back and be able to try that action, none of the creditors would be bound... So all the creditors could pursue whatever claims weren't satisfied from the bankruptcy. So he's in a Chapter 7 liquidation, so everything's liquidated supposedly, but I guess if he has to go earn a living after the bankruptcy proceedings have wrapped up, then all of the creditors would be able to pursue him, and so I guess the question is, would that be helpful? How would that be helpful to... Since you would be competing, I guess, with the rest of the creditors for his salary or whatever it was. Well, that's a good point, but I don't know that he'll have any gainful employment. His dental license has been revoked, and as far as I know, it's not been re-estated. Whether or not he'll have any gainful employment in the future is... So I guess that extraction was kind of an unfortunate word in light of what you went through with your teeth, I guess, but the... No pun intended. But the... You know, I think what we're trying to ascertain is how you would be in some sort of a better position, and it still sounds like your chances of ever getting your money are slim and none and slim left town, but that's... Other than one fact... I mean, we're just sort of trying to look at this from a practical standpoint of how would this benefit you? Well, I am a secured judgment creditor and no one else is, so I would have priority. I would be able to pursue his whatever assets he has more quickly. My claim is solid, and the judgment except hasn't been recorded because of the bankruptcy, but I would have... Secured by? What is your judgment secured by? You said you had a secured judgment. Well, I should be careful in the usage of that word. It's... I have a perfected judgment. It's secured by whatever's in the bankruptcy estate and whatever I'm awarded. So it's not... You're not secured by collateral? No, I'm not. Okay. So you have an unsecured claim in the bankruptcy, and the bankruptcy estate is a liquidation, so the bankruptcy estate is what it is, and then how much of your claim is getting satisfied out of the estate? I was awarded a portion with respect to his homestead exemption. He was denied a disability homestead. The trial court found that she didn't believe that he was disabled, so he didn't get an enhanced homestead, which gave me roughly $60,000 of my $300,000, $310,000 judgment, which I have not solidified yet. It went up on appeal. It was remanded for further findings. I have about a minute left, which I'd like to just go through quickly a couple of the elements if I can, unless there's any more questions. All right. I think you have to conclude there's no question that it was a fraudulent transfer because he did it while he was in bankruptcy, and he knew he shouldn't do it. Anybody that fills out those bankruptcy petition forms knows it tells you don't transfer any assets or hypothecate or so forth. But the issue is whether it's within one year before the date of filing the petition, and I guess we're looking at the current Chapter 7 petition. That's correct. The issue is, for me, whether he concealed it, and I believe that he did. In his SOFA, Statement of Financial Affairs, there's one question, question number 10, which says, did you transfer any property within the last 10 years into a trust? He did not disclose that, although he had made that transfer three months before he filed that petition. Although the property address is mentioned in his financial affairs, and the fact that he used to own it, he didn't disclose the fact that he transferred it. So one doesn't know that. He also did not disclose the fact that he was the grantor, the trustee, and the beneficiary of this retirement trust. He kept complete control of the property and did not disclose that until he was ordered to take a 2004 exam, and then it came out that he never really surrendered any possession of this property, and it was all a farce. I have about four minutes. I'd like to reserve that for rebuttal, if I can. You may. Thank you. Good morning, Your Honors. Michael Quaz on behalf of the debtor, Dr. Ronald Neff, and he would ask that I apologize for him. He's come down with a heavy case of the flu. He wanted to be here but was not able to make it due to that. So let me start by following up with what Appellant stated. I think I need to clarify what we're talking about here. This appeal is about a denial of a summary judgment of his 727 action to deny a discharge. He based it on the fact that the debtor allegedly transferred property within a year prior to the filing of this Chapter 7. There is no disputed record that that transfer did not occur within one year prior to this petition. Well, isn't it just whether this is a statute of limitations or a statute of repose? Well, actually, Your Honor, I disagree with that because when I get to my own argument, I'll just jump to it and answer your question. Because it would seem if from that standpoint, why shouldn't we follow the opinion in the District Court for the Northern District of the District Court? So I'll get to that, which is that the Toombley case, which is a Circuit Court case, disagrees with that decision, number one. Well, they do, and we're in the Ninth Circuit, so we can do what we want to do. That's very true, Your Honor, but we also have to look to the findings, which are looked at from clear error standpoint. This Court found on the record there was no concealment. You just heard the Appellant say that's his assertion, that even though it's more than one year before the date of the filing of the petition because of alleged concealment, that it then trails into some time period where it now falls within that one year. That's not what the Court found. The Court heard all his arguments and made a finding, which I don't believe the brief or the Appellant has come close to showing is erroneous, that there was no concealment because, in fact, in the second Chapter 13 where all this arose, there was one Chapter 13 that never went forward. He didn't even file completed schedules because he was depressed. Elderly, getting sick, what have you. Then there's a second Chapter 13 that goes on for a year and a half, and it's at the very inception of that Chapter 13 where he, in his schedules, as I put in my brief, the Bankruptcy Court said she didn't like that. Now, I'm paraphrasing a little. I was Dr. Nez's Bankruptcy Counsel. I stood there and said, fine, Your Honor, we'll give it back. It's not that big of a deal. He put it into a trust. He asserted it was a retirement asset. And I need to clarify one thing. Appellant keeps saying that he asserted it was still in the trust. That's not what he asserted. He asserted it should still be considered a retirement asset. And he lost on that. And the property has been sold, as has been properly pointed out, as part of the bankruptcy estate and is going to be distributed. So the bottom line is that it was technically voluntarily given back, although it was the result of discussions, but it was also clearly one year before. And, you know, I've gotten lost in... I think if I understand Mr. DeNos's argument, he's, if you assume that Mr. Neff's transfers of the Lake Harbor Lane property may have been fraudulent, was there anything that Mr. DeNos could have done to object to the transfers prior to Mr. Neff's filing of the Chapter 7 bankruptcy proceeding? Yes, and he did. He filed an objection to his Chapter 13. Unless I misunderstood the court's question, were you saying before the second Chapter 13? Well, it just sort of seems like he's out at every turn here. Who? The appellant. Well, he is. No way, but it would seem like there was nothing he could have done anywhere. Well, look, if I may, Your Honor... But then we're also trying to ascertain what good would any of that have done for him. But, you know, I didn't, you know, I realize, you know, he's a pro se, but I didn't find your briefs particularly helpful, to be honest. And so I feel like we're kind of talking past each other because I think it is important, whether it's a statute of limitations or a statute of repose. Oh, I think that's something that can be argued. However, in this case, is what I keep going back to. The court already made a finding there was no concealment, hence no equitable tolling. Hence, it doesn't matter. Even if it is a statute of repose, because of her findings there was no concealment. And she states on the record her reasons for that, which is that it was clearly listed in the Chapter 13 schedules. It was listed in Schedule A. It was listed in Schedule C. The trust was listed with the address of the property and it was listed in the Statement of Financial Affairs. So the bankruptcy court found there was no concealment. Without concealment... This case is different than I understood coming in. Can you point me to where that finding is? Yes, Your Honor. Actually, if you go to page nine of our brief, I actually quote it off the record. Page nine of our brief and... What's the cite to the record? May I retrieve my iPad? Sure. Okay. And while I'm looking, Your Honors, may I point out that I don't see how the Adib case doesn't give us a clear victory. Adib said, without a doubt, that for transferred in the Ninth Circuit, and that is a Ninth Circuit case, it has to be transferred and remain transferred at the time of filing. And it goes back to the very same thing the court was talking about, which is, what's the practical result? If it's been transferred out and brought back in, so it's part of the bankruptcy estate, there is no harm to the creditors. There's nothing more they would have gotten, other than what they got, regardless of what happened in the interim. Well, that's what I thought the case was about when I came in here. It turns out it's about there may be additional assets that become available to creditors, including appellants. So that's what's at stake now. Why isn't his objections to discharge should be deemed to be too late? Now, you give me one argument about the district court's or the bankruptcy court's findings, and I'm waiting to hear where I can find that. And that may be the end of it. But if that doesn't end it, then we go back to the question of whether discharge should still be on the table. Appellee's appendix, starting at page 122, Your Honor, and going on for the next couple of pages. And again, if you go to my brief, I should quote it on page 9. So what are you quoting? The bankruptcy court making a finding that she does not see concealment. Well, I'm reading page 9 of your brief. I don't see the word concealment or anything that looks like it. So what should I be looking for? All but the top of the page. Okay, wait a minute. It was appellee's appendix 121. Lines 12 through 14, the court stated, and I don't see concealment in the sense of, I don't see concealment of the fact there was property or content it was held in trust. Well, maybe in context that makes more sense. Okay? And going on to page 10 also refers to her other findings, and she actually references the fact that it wasn't concealed, because in the second chapter 13, which is what we're talking about, I guess, it was clearly disclosed numerous places throughout the schedules. No schedule is perfect. You can't give an entire written history of everything that's gone on in a case. You're supposed to answer the questions. And he disclosed the property. He disclosed the trust. He disclosed his assertions. So I go back, Your Honor, because I'm down to six minutes. I go back to the fact that I start from the end, which is if the court finds there's no concealment, which appellant just told you is this whole theory of equitable tolling, why are we, pardon my expression, spending this time over something that the bankruptcy court found and has not even, appellant hasn't come close to disputing that. And he may disagree with it. He may not like it. But that's a finding that is to be reviewed for clear error. Did you argue this to the BAP? Did the BAP address this point, this issue? Yes, it was in my brief, Your Honor, just as it is in yours. Did the BAP address it? As I sit here, I don't have their decision for me. I don't recall. I can say that my recollection is we waived oral argument. But my brief had the same authorities and the same arguments as the one I filed in this court. And if I can continue, Your Honors, again, the appellant wants to assert that the transfer was clearly fraudulent. We disagree. I have cited Stern. It is clearly appropriate and available to any debtor to do what's called pre-bankruptcy exemption planning. In fact, Stern says, as a matter of law, transferring non-exempt assets to exempt assets, or at least attempting to, in and of itself is not fraudulent. There has been no finding in the lower court that anything fraudulent occurred here. Because Judge Coffman, the judge in the second chapter 13, found there was no concealment. But concealment and fraudulent are two different things. Something could be fraudulent and said, yeah, I don't like it, it's fraudulent. The fact that everyone knew about it. They're two separate, I don't think they equate to the same finding. In the bankruptcy context, Your Honor, actually, they're often looked at at the same time. I agree they're technically different and could have different applications. I mean, couldn't something be fraudulent but not concealed? Theoretically, yes. But the statute says transferred, removed, destroyed, mutilated, or concealed, so disjunctive. Yes. However, remember the appellant's argument is that because it was not within one year, he has the argument that it was somehow concealed, which under the theory if it's a statute of limitations, then drags it into within a year. But then he still needs to overcome Adib. Because it's back in the debtor's name, listed in the final bankruptcy, and the creditors have gotten full use of it. So what's the point? That's exactly what Adib says. When you go to Adib, the policy of Adib is they even talk about the fact that debtors often do things that are dumb. So the BAP says that the property was transferred arguably fraudulently at the time, even though it was later transferred back to the estate. And then the statute, the time frame, the one year before the day of the filing of the petition, they considered whether that could be told or not under Young, the Supreme Court's opinion, Young and the analysis done by Womble. Now, that was the basis of the BAP's analysis. It determined that there wasn't such an equitable tolling of the one year period. Correct. Are you saying that the BAP's reasoning was irrelevant, that the BAP decided on the wrong ground, they should have been looking at whether there was concealment? I guess I'm not understanding your argument here. Well, again, what I did is say, here's how the argument would go. Appellant would like to say it was not technically within a year, but because of equitable tolling it technically then can be drawn within the year. The BAP found on different grounds than I'm arguing today, other than the fact that I incorporated their ruling, basically that they find, again, there is no equitable tolling that's applicable to this section. Right. I cited Twombly, which is, I forget, I think it's the Seventh Circuit. The BAP was right, but for the wrong reasons? Is that what you're saying? No, I think they're right for the right reasons. I just cite different. You're, like, taking me all over the place here. You think they're right, but you think there's an even easier way to get to the result. Well, yes, and if you read Stern and Adib, the two I cited, I think Adib is right on point. It's a case where a person, and I didn't answer the Justice's question, so let me go back to that. Your Honor, your question was, again, I forget. My question was whether you were disagreeing with the BAP's analysis. Now, the BAP was looking at transfers, so there was a transfer at some point in time that arguably was transferring the property of the debtor in an improper way under 727. Right. And then the debtor transferred it back, and the BAP said, let's look at the moment of transfer and see whether there was equitable tolling up until the point of the Chapter 7 filing and determined that there was not, that there was not equitable tolling and distinguished young and relied on the Fourth Circuit case, the Tidewater. And so the argument you're making now is about whether there was also continuing concealment. Is that what you're saying? Are you making a different argument? No, Your Honor. What I'm saying is that's the appellant's argument. That was his argument in the lower court that was found not to exist on the factual finding of the bankruptcy court. So what I'm saying is Tidewater applies, and it's several levels of, to use the Justice's term, the appellant's out on all issues. Well, he is because not only is it beyond the one year, equitable tolling doesn't apply under Tidewater and the authority cited by the BAP, which includes that apparently, but also the bankruptcy court found there was no factual basis for an assertion of concealment. I didn't see, and perhaps I missed it, I didn't see the BAP addressing this continuing concealment argument. Did the BAP address that argument? Was it raised to the BAP? It was raised by the appellant, and I argued, as I do in my brief here, that concealment didn't apply. And the BAP addressed it? I don't have it in front of me, Your Honor, so I apologize. I came here ready to argue, and I'm down to eight seconds. All I can say to the court is that I believe Adib is right on point, and it trumps all the arguments of appellant without a doubt, because it talks about the fact that it's transferred. It must remain transferred at the time of filing. That didn't occur here. It was back in the debtor's name over a year before this bankruptcy, the current instance of bankruptcy was filed, fully available to creditors. If you look at the policy of Adib, that policy is we want to encourage debtors who make mistakes, who get nervous, who are under pressure, to go out there and transfer stuff to their daughters and their sons and their ex-wives to hide them. We want to give them the policy ability to give it back so that they are in compliance when they file, because that's exactly what happened in Adib. He transferred it, then transferred it back before he filed, and the Ninth Circuit said for it to be a fraudulent, I shouldn't use that term, an improper transfer within the one year, it has to be transferred out of the debtor's name and remain transferred out. Once it's given back, it almost becomes a moot point. Does Your Honors have any other questions for me? Apparently not. All right. Thank you. Concealment was one of my arguments below, but not the primary argument, although I do believe there was concealment. I think the Justice hit it on the head. Fraud is fraud is fraud. This is clearly a fraudulent transfer. Well, if there wasn't concealment, could there be fraud? Of course. They're two distinct things. It was a fraudulent transfer. What do you allege was fraudulent about this if the bankruptcy court has concluded it wasn't concealed? I don't believe the bankruptcy court did conclude that. The bankruptcy court stated some impressions. Those issues were never reached because the bankruptcy court rested completely on the statute of limitations issue and didn't go further. I had argued those before her, but we never reached them because my action was precluded. But going back, the fraudulent transfer was a fraud upon all the creditors at the time because the debtor was trying to secrete this asset while he retained complete control of it. He tried to. He didn't get away with it, and it did ultimately go back into the estate. But isn't that what the statute is supposed to prevent? And the equity clearly says, you know, we're pitting the doctrine of a fresh start against someone who plays fast and loose with the bankruptcy rules. You conduct a fraudulent transfer. Now, I may or may not win the 727 case, but I never got a chance to try it. And there were a lot of other factors there. His attorney signed the trust document that apparently circumstantial evidence strongly showed was backdated. The deed wasn't recorded for two years after it was allegedly signed. There were a lot of other factors to indicate this was a fraudulent transfer, but I never had the chance to put that evidence on. The debtor claims that it was simply an attempt to take a non-exempt asset and transfer it into an exempt asset by putting it in a retirement trust. And he cites the Stern case for that. That's pre-petition. What he did was post-petition. So he could have transferred it into something else before he filed the petition. I don't know. There's some rules about that, doing that before a bankruptcy, too. But clearly this is not that situation. He had no right to transfer this property. I was thwarted from filing a 727, I contend, by a sagacious bankruptcy attorney who was guiding a debtor who he had a lot of problems. He had drug problems. He lost his license. A lot of motivation to hide this property, and only because he was caught. So I feel this matter lies squarely on a statute of limitations issue. And the judge said that, Judge Kaufman. If it's an equitable tolling situation, then I get a chance to put my case on. If it's not, then I guess I'm foreclosed. I think, based on my reading, and I was never a federal court practitioner, but the U.S. Supreme Court case of Young v. the U.S. is controlling here. I think they purposely wanted to foreclose this loophole. And they said so. That's what the cases which felt that this was an equitable tolling statute followed Young. And I think this Court should follow Young as well. Young clearly had very similar facts, similar enough that the legal principles involved are the same. Young involved a situation where the debtor had filed two Chapter 13s and prevented a creditor from going forward with a 727 action. And the Supreme Court in Young even said, we're not even going to look at whether or not the debtor intended to do that. The effect was that the creditor was foreclosed, and we want to close this loophole. So I think Young is controlling in this situation, and I can get a chance to go back and prove my concealment case and my fraudulent transfer case. I don't know what will happen, but I'll put it on if I'm given the opportunity. Thank you, Your Honor. Thank you. We thank both counsel for your arguments. The case just argued is submitted. That concludes our calendar for the morning, and we're adjourned.
judges: Clifton, Callahan, Ikuta